## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

IAN WRIGHT,
      Petitioner,

    v.

CHARLES LEE,
      Respondent.

No. 3:09-cv-01206 (SRU)

### RULING ON PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Ian Wright, an inmate currently confined at Cheshire Correctional Institution in
Cheshire, Connecticut, brings this action *pro se* for a writ of habeas corpus pursuant to 28 U.S.C.
§ 2254. He challenges his 2002 Connecticut conviction for murder, use of firearm in the
commission of a felony and carrying a firearm without a permit. For the reasons that follow, I
deny Wright's petition.

## I.    Standard of Review

A federal court will entertain a petition for a writ of habeas corpus that challenges a state
court conviction only if the petitioner claims that his custody violates the Constitution or laws of
the United States. *See* 28 U.S.C. § 2254(a). A claim that a conviction was obtained in violation
of *state* law is not cognizable in federal court. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

Section 2254(d) "imposes a highly deferential standard for evaluating state-court
rulings," and "demands that state-court decisions be given the benefit of the doubt." *Renico v.
Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted); *Woodford v. Visciotti*, 537
U.S. 19, 24 (2002). A federal court cannot grant a state prisoner's petition for a writ of habeas

corpus with regard to any claim that was rejected on the merits by the state court, unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). That standard is very difficult to meet. *See Metrish v. Lancaster*, __ U.S. __, __, 133 S. Ct. 1781, 1786 (2013).

Clearly established federal law is found in "holdings," not "dicta," of the United States Supreme Court at the time of the state court decision. *See Howes v. Fields*, 565 U.S. 499, 505 (2012); *Carey v. Musladin*, 549 U.S. 70, 74 (2006). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" and "therefore cannot form the basis for habeas relief." *Parker v. Matthews*, 567 U.S. 37, 48–49 (2012) (quoting 28 U.S.C. § 2254(d)(1)). The law in question may be either a "generalized standard" or a "bright-line rule designed to effectuate such a standard in a particular context." *See Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir. 2002).

A decision is "contrary to . . . clearly established Federal law" when the state court "applies a rule different from the governing law set forth" by the Supreme Court, or when it "decides a case differently than [the Supreme Court] ha[s] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A decision "involve[s] an unreasonable application of . . . clearly established Federal law" when the state court correctly identifies the governing law, but applies that law "unreasonably to the facts of a particular prisoner's case, or refuses to extend a legal principle that the Supreme Court has clearly

established to a new situation in which it should govern." *See Davis v. Grant*, 532 F.3d 132, 140 (2d Cir. 2008). It is not enough that "a federal court believes the state court's determination was incorrect" or erroneous. *See Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Rather, the state court's application of clearly established law must be objectively "unreasonable—a substantially higher threshold." *See id.* Thus, a state prisoner must show that the challenged court ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Burt v. Titlow*, __ U.S.__, __, 134 S. Ct. 10, 15 (2013) (federal habeas relief warranted only where the state's justice system has experienced an "extreme malfunction").

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct. The petitioner bears the burden to rebut that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (standard for evaluating state-court rulings where constitutional claims have been considered on the merits and which affords state-court rulings the benefit of the doubt is "highly deferential" and "difficult [for petitioner] to meet"). In addition, the federal court's "review under section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at 181.

## II.  Procedural History

On October 15, 2000, Wilfredo Sanchez was murdered at the Jamaican American and Puerto Rican Club in Bridgeport, Connecticut. Bridgeport police officers arrested Ian Wright later that night on charges of murder and carrying a pistol without a permit. *See* Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, App'x A, Doc. No. 73, at 1–2 (filed in paper form). On

December 21, 2001, in the Connecticut Superior Court for the Judicial District of Fairfield, the State's Attorney filed an amended information that charged Wright with murder in violation of Conn. Gen. Stat. § 53a-54a(a), using a firearm in the commission of a Class A felony in violation of Conn. Gen. Stat. § 53-202k, and carrying a pistol or revolver without a permit in violation of Conn. Gen. Stat. § 29-35. *See* Pet'r's Resp. Mem. Opp'n Pet. Writ Habeas Corpus, App'x D, Doc. No. 83-4.

On February 1, 2002, a jury found Wright guilty of all three charges. *See* Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, App'x A, Doc. No. 73, at 1 (filed in paper form). On March 22, 2002, a Connecticut Superior Court judge sentenced Wright to a total effective sentence of thirty-five years of imprisonment. *See id.*

Wright appealed his convictions on three grounds. *See State v. Wright*, 77 Conn. App. 80 (2003). He claimed that (1) the trial judge erred in failing to charge the jury that they must acquit him if the principal's use of force was justified as having been used in self-defense; (2) there was insufficient evidence to support his conviction as an accessory to murder; and (3) the trial judge erred in failing to charge the jury on the defense of necessity as it applied to the charge of carrying a firearm without a permit. *See id.* at 85, 91. On May 27, 2003, the Connecticut Appellate Court affirmed the judgment of conviction. *See id.* at 93. On September 25, 2003, the Connecticut Supreme Court denied Wright's petition for certification to appeal the decision of the Connecticut Appellate Court. *See State v. Wright*, 266 Conn. 913 (2003).

In July 2003, Wright filed a petition for writ of habeas corpus challenging his conviction in the Connecticut Superior Court for the Judicial District of Tolland at Rockville. *See* Am. Pet. Writ Habeas Corpus, Doc. No. 45, at 6. Attorney William P. Burns, Jr. was appointed to represent Wright. *See* Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, App'x F, Doc. No. 73

(filed in paper form). In an amended petition filed on January 24, 2006, Wright raised three grounds: ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and prosecutorial misconduct. *See id*., App'x G.

The Superior Court held hearings on the claims in the amended petition on April 5, and May 3, 2006. *See id.*, App'x Z, App'x AA. On July 6, 2006, the court denied Wright's amended petition. *See Wright v. Comm'r of Corr.*, 2006 WL 2053747 (Conn. Super. Ct. July 6, 2006).

On December 11, 2006, Wright filed a motion for articulation of the bases for denying the ineffective assistance of trial and appellate counsel claims raised in Wright's amended petition. *See* Pet'r's Resp. Mem. Opp'n Pet. Writ Habeas Corpus, App'x 12, Doc. No. 89, at 22–25. On January 2, 2007, the habeas judge denied Wright's motion for articulation. *See* Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, App'x G, Doc. No. 73 (filed in paper form).

Wright appealed the denial of the amended habeas petition. *See id.*, App'x J. On March 11, 2008, the Connecticut Appellate Court concluded that Wright had failed to furnish an adequate record for review and affirmed the decision of the habeas court. *See Wright v. Comm'r of Corr.*, 106 Conn. App. 342, 345 (2008) (per curiam). On April 8, 2008, Wright filed a motion for reconsideration *en banc*, *See* Pet'r's Resp. Mem. Opp'n Pet. Writ Habeas Corpus, App'x 17, Doc. No. 89, at 55–59, which the Connecticut Appellate Court denied on June 6, 2008. *See* Order Denying Mot. Reconsid. En Banc, *Wright v. Comm'r of Corr.*, No. AC 27956 (June 6, 2008). On September 5, 2008, the Connecticut Supreme Court denied Wright's petition for certification to appeal the Appellate Court's decision affirming the denial of his first habeas petition. *See Wright v. Comm'r of Corr.*, 289 Conn. 901 (2008).

On January 23, 2014, the Connecticut Supreme Court granted Wright permission to file a second petition for certification to appeal from the Connecticut Appellate Court's decision

affirming the denial of his first state habeas petition. *See* Resp't's Mem. Opp'n Pet. Writ Habeas

Corpus, App'x R, Doc. No. 73 (filed in paper form). On March 19, 2014, the court denied

Wright's second petition for certification. *See Wright v. Comm'r of Corr.*, 311 Conn. 931 (2014).

In November 2006, Wright filed a second state petition for writ of habeas corpus

challenging his conviction in the Connecticut Superior Court for the Judicial District of Tolland

at Rockville. *See* Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, App'x S, Doc. No. 73 (filed in

paper form). In June 2007, a judge granted Wright's motion for appointment of counsel. *See id.*

On July 29, 2009, Wright filed the present federal habeas petition. The respondent moved

to dismiss the action on the ground that two of the three grounds in the petition had not been

exhausted. *See* Doc. No. 10. Wright moved to stay this case in order to permit him to go back to

state court and exhaust his available remedies as to the two unexhausted claims in the petition.

*See* Doc. No. 11. On April 14, 2010, I denied the respondent's motion to dismiss without

prejudice and granted Wright's motion to stay this case. *See* Order, Doc. No. 12.

In December 2009, Wright filed a third state petition for writ of habeas corpus

challenging his conviction in the Connecticut Superior Court for the Judicial District of Tolland

at Rockville. *See Wright v. Warden, State Prison*, No. TSR-CV10-4003354-S (Dec. 28, 2009).

On January 7, 2011, Wright's second and third state habeas petitions were consolidated. *See id.*

In an amended petition filed in the consolidated state action on November 22, 2011,

Wright raised four grounds: ineffective assistance of trial counsel, ineffective assistance of

appellate counsel, ineffective assistance of habeas counsel, and ineffective assistance of appellate

habeas counsel. *See* Pet'r's Resp. Mem. Opp'n Pet. Writ Habeas Corpus, App'x A, Doc. No. 83-

1. On January 20, 2012, the court dismissed the second and third claims of Wright's amended

petition (i.e., the ineffective assistance of trial counsel and ineffective assistance of appellate

counsel claims) as second or successive. *See* Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, App'x T, Doc. No. 73 (filed in paper form). On February 8, and 24, 2012, the Superior Court held hearings on the first and fourth claims in the amended petition filed in the consolidated state habeas action. *See* Pet'r's Resp. Mem. Opp'n Pet. Writ Habeas Corpus, App'x G, App'x H, Docs. Nos. 83-7, 83-8, & 83-9. At the conclusion of the hearing on February 24, 2012, the court issued an oral decision denying the remaining claims of the amended consolidated petition. *See id.*, App'x H, Doc. No. 83-9; *Wright v. Comm'r of Corr.*, 147 Conn. App. 510, 513 (2014).

Wright appealed the dismissal of the second and third claims—but not the first and fourth claims—in the amended consolidated petition. *See Wright*, 147 Conn. App. at 513 & n.3. On January 14, 2014, the Connecticut Appellate Court dismissed Wright's appeal. *See id.* at 516. On February 26, 2014, the Connecticut Supreme Court denied Wright's petition for certification to appeal the Appellate Court's decision. *See Wright v. Comm'r of Corr.*, 311 Conn. 922 (2014).

On April 7, 2014, Wright filed a motion to lift the stay in this action and an amended petition for writ of habeas corpus. Docs. Nos. 44 & 45. On April 29, 2014, I ordered that the stay be lifted. *See* Ruling, Doc. No. 47. The respondent has filed a memorandum in opposition to Wright's petition, Doc. No. 72, to which Wright has filed multiple replies. *See* Docs. No. 82, 94, 113, & 115. In addition, Wright filed (and subsequently withdrew) a new federal habeas petition, *see* Doc. No. 1, *Wright v. Falcone*, No. 3:15-cv-01308 (SRU) (D. Conn. Aug. 31, 2015), as well as a series of motions seeking hearings or status conferences. *See, e.g.*, Mot. Court Order, Doc. No. 120; Mot. Immediate Hr'g, Doc. No. 121; Mot. Severance, Doc. No. 123; Mot. Status Conf., Doc. No. 124; Mot. Immediate Hr'g, Doc. No. 127; Mot. Immediate Hr'g, Doc. No. 130; Mot. Relief of Judgment, Doc. No. 131; Mot. Set Aside State Court Judgment, Doc. No. 132, Mot. Attack Integrity of Proceedings, Doc. No. 133; Mot. Immediate Hr'g, Doc. No. 138.

## III.    Factual Background

On Wright's initial appeal, the Connecticut Appellate Court determined that the trial jury

reasonably could have found the following facts:

> On October 15, 2000, at approximately 11 p.m., Betty Robertson entered
> the Jamaican American and Puerto Rican Club (club) in Bridgeport to
> attend a party. Everyone, including the victim, Wilfredo Sanchez, was
> searched for weapons as they entered the club. Robertson noted, however,
> that [Ian Wright] and his brother, David Wright, were not searched when
> they entered the club. After Robertson and the victim entered a hallway
> near the rest rooms to "roll some marijuana," [Wright] began flicking the
> hallway lights. When the victim asked [Wright] to stop, a fight started
> between them.

> During the fight, John Williamson was standing behind [Wright], but close
> to the rest room, while David Wright was standing at the end of the
> hallway, also to the rear of [Ian Wright]. Robertson stated that as the
> victim was getting the better of the fight, she heard gunshots, and saw the
> victim fall to the ground and Williamson fall into the women's rest room.
> After the gunshots, Robertson saw both [Ian Wright] and David Wright
> run past her, both with guns in their hands, and, as they fled, she heard
> more gunshots from outside the club.

> At trial, Williamson testified that while he was in the men's rest room, he
> heard the sound of people fighting and, as he departed the rest room, saw a
> fight. Subsequently, he heard two gunshots and fell into the women's rest
> room, having been shot in the leg. While he was lying on the floor, he
> heard another gunshot. During the shooting, he did not see either [Wright]
> or his brother.

> The state also called James Hamilton to testify concerning a conversation
> that he had had with [Wright] while both were incarcerated after the
> evening in question. Hamilton, who had no involvement in the incident,
> testified that while he and [Wright] were cell mates, [Wright] told him that
> during the evening of the shooting, he had seen the victim by the rest room
> and had told the victim to stop selling drugs because it was his family's
> club. Hamilton claimed that [Wright] told him that he had been in
> possession of a gun at the time and that when he and the victim began to
> fight, he drew his gun. Hamilton added that [Wright] told him that as he
> and the victim had struggled for the gun, it discharged, after which
> [Wright] had backed up and shot the victim. Hamilton also testified that
> [Wright] indicated to him that both he and his brother had had weapons.
> [Wright] stated that he had a .45 caliber gun and that his brother had a .38

caliber weapon, and that as he and his brother were leaving the club, they both fired their guns.

Shortly after the shooting at the club, Bridgeport police observed [Wright] who, while driving his automobile near Bridgeport Hospital, drove past a stop sign. After the police pursued [Wright's] car, both [Wright] and his brother fled from the car and were apprehended after being chased by the police. The police noted that the car windows had been damaged, likely the result of gunshots. In the course of the police chase, David Wright was seen discarding a gun that later was determined to be the murder weapon. [Ian Wright] was discovered, shirtless, lying in an alley hidden by brush. He was not found in possession of a weapon, nor was any other weapon found in his vicinity.

The defense called John Pettway, who testified that he was in the club after 10 p.m. on the evening in question, and that the victim had been searched upon entering the club and that no gun was discovered on him. Pettway indicated that there had been a fight between the victim and another man in the rest room hallway. During the fight, he heard the "shooter" tell the victim that this was his "people's club," that he saw the victim strike the shooter in the face and that he saw the "shooter" draw a gun. Pettway testified that he first heard one gunshot and then several more as he started to leave the hallway. He saw [Wright] and his brother leave the hallway . . . .

From an autopsy, it was determined that the victim had died as a result of a bullet wound from a .38 caliber gun. That weapon later was determined to be the gun that David Wright had thrown from [Ian Wright's] car while being pursued by the police. Bullet casings from that same weapon were discovered in [Wright's] car and outside the club. Williamson's gunshot wound was found to have been caused by a .45 caliber weapon. At the scene, the Bridgeport police also recovered a .45 caliber shell casing from the hallway and other .45 casings outside the club, all from the same weapon. In addition to those casings, the police found other casings of various calibers outside the club. Results consistent with gunshot residue were found on the hands of [Ian Wright] and David Wright.

*Wright*, 77 Conn. App. at 82–85 (footnote omitted).

## IV.    Discussion

Wright asserts one ground that he raised on direct appeal of his conviction and two grounds that he raised in his state habeas petitions. He argues that: (1) the trial judge erred in failing to charge the jury on Wright's defense of justification or self-defense regarding the

conduct of a third party shooter; (2) trial counsel was ineffective for failing to move for a bill of particulars with regard to the first count of the information; and (3) appellate counsel was ineffective for failing to challenge the trial court's jury charge on accessorial liability.

A. Jury Instruction on Self-Defense

Wright contends that after the trial judge decided to instruct the jury that they could find him guilty as an accessory to murder, the judge should have instructed the jury that it must acquit him if the principal was justified in using deadly force against the victim under Connecticut General Statues §53a-19.[1] The respondent contends that Wright's claim involves a matter of state law that is not reviewable in a federal habeas petition.

The Connecticut Appellate Court concluded that the following additional facts were relevant to its consideration of Wright's jury instruction claim:

> Although the state initially charged [Ian Wright] as the shooter, there was evidence adduced at trial that David Wright had fired the weapon, which resulted in the victim's death. On that basis, at the conclusion of the evidence, the state requested, and the court gave, an instruction concerning [Ian Wright's] accessorial liability pursuant to General Statutes § 53a-8.

---

[1] Connecticut General Statutes § 53a-19 provides in pertinent part that:

> (a) Except as provided in subsections (b) and (c), a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

> (b) Notwithstanding the provisions of subsection (a), a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating . . . .

*Wright*, 77 Conn. App. at 86.

Wright's claim as presented in his amended habeas petition is based on a violation of state law. *See* Am. Pet. Writ Habeas Corpus, Doc. No. 45, at 13. The Supreme Court has emphasized that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67–68. Federal courts are limited to reviewing claims that a state conviction was obtained in violation of some right guaranteed by the United States Constitution or other federal law. *See* 28 U.S.C. § 2254(a) (federal courts "shall entertain an application for a writ of habeas corpus in behalf of a person in state custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States"); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law.").

The adequacy of a state jury charge is generally a question of state law, and is not reviewable in a federal habeas corpus petition absent a showing that the charge deprived the defendant of a federal constitutional right. *See Cupp v. Naughten*, 414 U.S. 141, 146 (1973). In reviewing Wright's claim, the Connecticut Appellate Court relied on state statutes and cases governing jury instructions on self-defense. *See Wright*, 77 Conn. App. at 85–90. The court noted that under Connecticut law, it is the defendant's burden to present sufficient evidence to support a jury instruction on self-defense. *See id.* at 88. Because Wright failed to establish an "evidentiary foundation" for an instruction on self-defense, the Appellate Court concluded that to give the instruction "would have been no more than judicial invitation to jury speculation." *See id.* at 89. Consequently, the court held that the trial judge "properly" chose not to give such an instruction to the jury. *See id.* at 89–90. Because the Appellate Court decided the question of whether the instruction on use of force in defense of others was warranted on state law grounds,

the claim is not cognizable in a federal habeas petition. *See Estelle*, 502 U.S. at 67 ("federal habeas corpus relief does not lie for errors of state law"); *Engle v. Isaac*, 456 U.S. 107, 119–21 & n.21 (1982) (challenge to correctness of self-defense instructions under state law provide no basis for federal habeas relief); *Gryger v. Burke*, 334 U.S. 728, 731 (1948) ("We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question.").

In his reply to the respondent's opposition memorandum, however, Wright contends that his claim is reviewable because he also challenged the state court's determination as depriving him of his fundamental due process right to present a defense, a federal constitutional right articulated by *Washington v. Texas*, 388 U.S. 14 (1967). *See* Pet'r's Resp. Mem. Opp'n Pet. Writ Habeas Corpus, Doc. No. 82, at 9. Wright's brief on appeal from his conviction did include a claim that due process both protected his right to establish a defense and also entitled him to proper jury instructions on the elements of that defense. *See* Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, App'x A, Doc. No. 73, at 15 (filed in paper form).

To warrant habeas corpus relief with regard to an improper jury instruction, a petitioner must establish that the instruction "so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147). That is, the petitioner must show "not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp*, 414 U.S. at 146. When analyzing a claim of an improper jury instruction, the court must examine the instruction "in the context of the charge as a whole" and the entire trial record. *See Francis v. Franklin*, 471 U.S. 307, 315 (1985).

Although the Connecticut Appellate Court's analysis of Wright's claim relied on state law, the court did apply a standard of review consistent with United States Supreme Court precedent regarding jury instruction claims. Because the Appellate Court applied the correct legal principles, its decision is not contrary to federal law. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (holding that state court need not cite—nor even be aware of—relevant Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them"). Hence, to entitle Wright to a writ of habeas corpus, the Appellate Court's decision must have been an "unreasonable application" of clearly established federal law as articulated by the Supreme Court.

In *Washington v. Texas*, the Supreme Court stated that a defendant's "right to present his own witnesses to establish a defense . . . is a fundamental element of due process of law." 388 U.S. at 19. The due process right to present a defense does not, however, guarantee a defendant the right to have a judge instruct a jury on any particular affirmative defense that he seeks to raise. *See Gilmore v. Taylor*, 508 U.S. 333, 344 (1993) (rejecting argument that constitutional right to present a defense includes right to have jury consider an affirmative defense). Wright has not cited (and I have not found) any Supreme Court case that held a defendant's federal constitutional rights are violated by a state trial court's refusal, in connection with a charge of accessory to murder, to instruct the jury on the affirmative defense of use of force by a principal in defense of others.

Because Wright did not have a federal constitutional right to his desired jury instruction, he has not shown that the omission of the instruction deprived him of due process. Thus, I conclude that the Connecticut Appellate Court reasonably applied federal law in deciding that the trial court did not err in deeming Wright's defense of others instruction unwarranted. *See*

*Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) ("[I]t is not 'an unreasonable application of' 'clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by th[e] [Supreme] Court.") (internal citation omitted). Accordingly, I deny Wright's petition for a writ of habeas corpus on the first ground.

B.  <u>Ineffective Assistance of Trial and Appellate Counsel</u>

In his second ground for relief, Wright argues that his trial attorney rendered ineffective assistance of counsel because he failed to file a motion for bill of particulars with regard to the first count of the information. In his third ground for relief, Wright contends that the attorney who represented him on direct appeal improperly failed to assert a challenge to the trial court's jury instruction on accessory liability. The respondent argues that Wright's ineffective assistance of trial counsel claim is procedurally defaulted, and that his ineffective assistance of appellate counsel claim is not exhausted and also is procedurally defaulted. I agree with the respondent, and, as a result, I conclude that I cannot review either of Wright's remaining claims.

1.  Exhaustion and Procedural Default – Appellate Counsel Claim

A prerequisite to habeas corpus relief under 28 U.S.C. § 2254 is the exhaustion of available state remedies. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion promotes "principles of comity" between the federal and state judicial systems, by giving states "the first opportunity to address and correct alleged violations of state prisoner[s'] federal rights." *See Coleman v. Thompson*, 501 U.S. 722, 731 (1991).

To satisfy the exhaustion requirement, a petitioner must present the essential factual and legal bases of his federal claim to each appropriate state court (including the highest state court capable of reviewing the claim), in order to give state courts a full and fair "opportunity to pass upon and correct alleged violations of [state] prisoners' federal rights." *Duncan v. Henry*, 513

14

U.S. 364, 365 (1995) (per curiam) (internal quotation marks omitted). A federal claim has been

"fairly present[ed] . . . in each appropriate state court (including a state supreme court with

powers of discretionary review)" when the petitioner has straightforwardly "alert[ed] that court

to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal

parentheses and quotation marks omitted). Conversely, "a state prisoner does not 'fairly present'

a claim to a state court if that court must read beyond a petition or a brief . . . that does not alert it

to the presence of a federal claim in order to find material . . . that does so." *Id.* at 32. Failure to

exhaust may be excused only where "there is no opportunity to obtain redress in state court or if

the corrective process is so clearly deficient to render futile any effort to obtain relief."

*Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (per curiam).

   After the hearing in Wright's first state habeas proceeding, the Superior Court denied the

petition with respect to all claims. *See Wright*, 2006 WL 2053747. In his brief appealing from

that decision, appellate habeas counsel raised two claims: (1) trial counsel had been ineffective in

failing to move for a bill of particulars with regard to the first count of the information, and (2)

appellate counsel was ineffective for failing to correct the misstatement regarding trial testimony

that appeared within the state's appellate brief (by filing a reply brief, raising the misstatement at

oral argument to the Connecticut Appellate Court, or including a correct statement of trial

testimony in Wright's petition for certification to the Connecticut Supreme Court).[2] *See* Resp't's

Mem. Opp'n Pet. Writ Habeas Corpus, App'x T, Doc. No. 73 (filed in paper form).

---

[2] Although Wright's habeas counsel referred in a footnote to Wright's ineffective assistance of
appellate counsel claim based on counsel's failure to challenge the instruction on accessory
liability, he did not otherwise mention, discuss, or offer any support for that claim. *See* Resp't's
Mem. Opp'n Pet. Writ Habeas Corpus, App'x J, Doc. No. 73 (filed in paper form).

The Connecticut Appellate Court declined to review either of Wright's claims because the trial court's decision failed to include any findings of facts regarding the issues appealed. *See Wright*, 106 Conn. App. at 345. Thus, the court deemed the record insufficient to review Wright's petition, and affirmed the judgment of the trial court. *See id.* The Appellate Court also noted that, although appellate habeas counsel filed a request for an articulation of the facts supporting the trial court's decision to deny Wright's claims, counsel had not filed a motion for review of the denial of that motion. *See id.* at 344–45. Wright filed two petitions for certification to appeal the decision of the Appellate Court, both of which were denied by the Connecticut Supreme Court without comment. *See Wright*, 289 Conn. 901; *Wright*, 311 Conn. 931.

The respondent argues that Wright's ineffective assistance of appellate counsel claim is unexhausted, because it was not included in Wright's brief on appeal from the denial of his first state habeas petition. A review of the brief reveals that Wright did raise an ineffective assistance of appellate counsel claim, but not the one asserted in his present petition. *See* Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, App'x A, Doc. No. 73, at 15–19 (filed in paper form).

The respondent acknowledges that Wright's second petition for certification to appeal from the decision of the Appellate Court *did* include the ineffective assistance of appellate counsel claim. *See id.*, App'x Q. Nevertheless, the respondent correctly contends that a petitioner may not exhaust a claim by first raising it in a petition for certification to the Connecticut Supreme Court, without raising it on appeal to the Appellate Court. *See State v. Saucier*, 283 Conn. 207, 222 (2007) ("[A] claim that has been abandoned during the initial appeal to the Appellate Court cannot subsequently be resurrected by the taking of a certified appeal to th[e] [Connecticut Supreme C]ourt.") (citation and internal quotation marks omitted). Furthermore, the Second Circuit has held that "[p]resenting a claim for the first time to a state court of

discretionary review is insufficient to exhaust the claim unless th[at] court considers it." *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)). The Connecticut Supreme Court is "a state court of discretionary review," *see* Conn. Gen. Stat. § 51-197f; Conn. Prac. Book §§ 84-1 & 84-2, and nothing in that court's denial of Wright's petitions for certification indicates that the court actually "consider[ed]" his claims. *See Lurie*, 228 F.3d at 124; *Wright*, 289 Conn. 901; *Wright*, 311 Conn. 931.

Therefore, it is apparent that Wright did not fully or fairly exhaust his ineffective assistance of appellate counsel claim by raising it on appeal from the decision dying the first state habeas petition. The respondent argues that Wright's claim must be deemed exhausted and procedurally defaulted. A claim that was not fairly presented to the state courts and does not satisfy the requirements of section 2254(b)(1) may still be "deemed exhausted" by a federal habeas court "if it is clear that the state court would hold the claim procedurally barred." *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991) (collecting cases). But that "apparent salve . . . proves to be cold comfort to most petitioners," because such a claim also is deemed "procedurally defaulted" and cannot provide grounds for habeas relief. *See Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) ("[W]hen the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts also must deem the claims procedurally defaulted.") (quoting *Coleman,* 501 U.S. at 735 n.1).

Although Wright did not fully exhaust his claim of ineffective assistance of appellate counsel in his first state habeas petition, he reasserted the same claim in a second consolidated state habeas petition in 2011. The trial court dismissed the claim in the second habeas petition on the basis that it was successive pursuant to Conn. Prac. Book § 23-29(3). Thus, it is evident that

the trial court considered Wright's claim to be procedurally barred. In view of the fact that Wright's ineffective assistance of appellate counsel claim was procedurally barred, I deem it to have been exhausted, but also to be procedurally defaulted. *See Aparcio*, 269 F.3d at 90.

2. Procedural Default – Trial Counsel Claim

Next, the respondent asserts that Wright's ineffective assistance of trial counsel claim has been procedurally defaulted, because the Appellate Court declined to review the merits of the claim based on an adequate and independent state procedural rule. Under the procedural default doctrine, a federal court will not review the merits of a claim raised in a habeas petition—including a constitutional claim—if (1) the state court declined to address the claim because the prisoner "failed to meet a state procedural requirement," and (2) the state court decision is based on "independent and adequate state procedural grounds." *See Walker v. Martin*, 562 U.S. 307, 315-16 (2011) (citations omitted). A state rule or requirement must be "firmly established and regularly followed" by the state in question to qualify as an "adequate" procedural ground. *See Beard v. Kindler*, 558 U.S. 53, 60 (2009). A state court decision will be "independent" and unreviewable in federal court when it "fairly appear[s] to rest primarily on state procedural law." *Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006) (citing *Coleman*, 501 U.S. at 739–40).

It is evident that the Appellate Court expressly relied on a state procedural rule to decline to review Wright's ineffective assistance of counsel claim on appeal from the denial of his first state habeas petition. *See Wright*, 106 Conn. App. at 345 (noting that it was Wright's burden to provide an adequate record for review under Conn. Prac. Book § 66-5, and that there were insufficient factual findings to review his claims because Wright had not requested review of the denial of his motion for articulation of the bases for denying his habeas claims). In addition, it is clear that the trial court dismissed Wright's ineffective assistance of trial and appellate counsel

18

claims in his second state habeas petition based on a state procedural rule. *See* Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, App'x T, Doc. No. 73 (Jan. 20, 2012) (dismissing counts two and three of the amended habeas petition, which were identical to claims raised in first state habeas petition, as successive pursuant to Conn. Prac. Book § 23-29(3)).

Furthermore, at the time of the decision by the Connecticut courts on Wright's first state habeas petition in July 2008, the procedural rules governing the filing of motions for articulation and the duty of the petitioner to supply an adequate record for review were definite, well-established and regularly applied. *See, e.g.*, Conn. Prac. Book § 61-10 ("It is the responsibility of the appellant to provide an adequate record for review."); *Bragdon v. Sweet*, 102 Conn. App. 600, 605–06 (2007) (declining to review claim on appeal because appellant "failed to satisfy his burden" to "provide an accurate record for review" as required by Conn. Prac. Book § 61-10); *Narumanchi v. DeStefano*, 89 Conn. App. 807, 815 (2005) ("It is axiomatic that the appellant must provide this court with an adequate record for review. . . . Because the plaintiff failed to satisfy that burden, we decline to review his claim."); *Adorno v. Comm'r of Corr.*, 66 Conn. App. 179, 187 n.3 (2002) ("It is the appellant's burden to provide an adequate record for review. . . . It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision . . . to clarify the legal basis of a ruling . . . or to ask the trial judge to rule on an overlooked matter.") (citation and internal quotation marks); *Conn. Nat'l Bank v. Gager*, 66 Conn. App. 797, 800–01 (2001) (declining to review claim because defendant "did not request a further articulation" of the basis for decision pursuant to Conn. Prac. Book § 66-5, and "did not file a motion for review of the trial court's articulation" pursuant to Conn. Prac. Book § 66-7); *State v. Crespo*, 246 Conn. 665, 669 (1998) ("[R]eview of a trial court's denial of a motion for articulation is exclusively by way

of a motion for review pursuant to Practice Book § 66-7 . . . ."); *Woolcock v. Comm'r of Corr.*, 62 Conn. App. 821, 822 (2001) (declining to review pretrial credit claim because "[t]he sole remedy of any party desiring the court having appellate jurisdiction to review the trial court's decision on the motion filed pursuant to this section . . . shall be by motion for review under Section 66-7") (citing Conn. Prac. Book § 66-5).

So too, at the time of the decision by the Connecticut courts on Wright's ineffective assistance of trial and appellate counsel claims in his second state habeas petition in January 2012, the rules governing the consideration of successive claims in a state habeas petition were definite, well-established and regularly applied. *See Asif v Comm'r of Correction*, 132 Conn. App. 526 (2011) (affirming dismissal of claims as "successive pursuant to Practice Book 23-29(3)"); *Gonzalez v. Warden*, 2011 WL 2479992, at *2 (Conn. Super. Ct. May 24, 2011) ("Because the petitioner has not offered any new facts or evidence to support his claim, his petition is subject to dismissal as a successive petition under Practice Book § 23-29(3). This section provides for dismissal by the court 'upon its own motion or upon motion of the respondent' if the court determines that: 'the petition presents the same ground as a prior petition previously denied and fails to state new facts or to proffer new evidence not reasonably available at the time of the prior petition . . . .'"); *Williams v. Warden*, 2010 WL 5573746, at *2 (Conn. Super. Ct. Dec. 13, 2010) (previously litigated claims of ineffective assistance of counsel barred from review pursuant to section 23-29(3) in absence of any newly discovered evidence).

Hence, I conclude that Wright's claim of ineffective assistance of trial counsel (based on counsel's failure to file a motion for bill of particulars) was procedurally defaulted in the first and second state petitions. *See Walker*, 562 U.S. at 315–16 (claim procedurally defaulted

because the petitioner failed to meet a state procedural requirement and the state court decision was based on independent and adequate procedural grounds).

3. Exceptions to Procedural Default Doctrine

The respondent argues that, due to the procedural default of both of Wright's claims of ineffective assistance of counsel, I may not review those claims absent a showing of cause and prejudice. The standard of "cause and prejudice" defines the scope of the limited circumstances in which a state prisoner can obtain federal habeas review despite having defaulted on his federal claim in state court pursuant to an independent and adequate state procedural rule. Under that standard, a petitioner must demonstrate "cause for his state-court default . . . , and prejudice therefrom." *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Otherwise, the petitioner can only obtain review if he "can demonstrate a sufficient probability that [] failure to review his federal claim will result in a fundamental miscarriage of justice." *Id.*

To establish "cause" for a procedural default, a petitioner must show "some objective factor external to the defense" that "impeded . . . efforts" to previously raise the claim. *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Examples of such external factors include interference by state officials impeding compliance with state procedural rules, or a showing that the factual or legal basis for a claim was not reasonably available to defense counsel. *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991) ("For cause to exist, the external impediment, whether it be government interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."). To show "prejudice," a petitioner must demonstrate that the failure to raise the claim had a "substantial" injurious effect on the petitioner's case, such that he was denied "fundamental fairness." *Murray*, 477 U.S. at 494.

Wright contends that there was cause for the default of his claims. He states that he made diligent efforts to exhaust his claims, but the state courts refused to consider their merits. Nonetheless, the state courts' alleged refusal to consider Wright's ineffective assistance of counsel claims on the merits does not constitute cause for the procedural default of those claims.

It is evident that the Appellate Court did not consider the merits of Wright's claims on appeal from the denial of his first petition because there was no record from which to review the claims. The court noted that although habeas counsel had filed a motion for articulation before the trial court, counsel did not pursue the denial of that motion by filing a motion for review. Thus, the inadequate record was not caused by something external to Wright's counsel.

Although not specifically raised by Wright, deficient performance by an attorney may constitute cause for failing to comply with a State's procedural rule. Nevertheless, "[a]ttorney error short of ineffective assistance of counsel"—as defined by *Strickland* v. *Washington*, 466 U.S. 668 (1984)—"does not constitute cause for a procedural default even when that default occurs on appeal rather than at trial." *Murray*, 477 U.S. at 492. "[A]n attorney's negligence in a postconviction proceeding does not establish cause . . . except as to initial-review collateral proceedings for claims of ineffective assistance of counsel at trial." *Martinez v. Ryan*, 566 U.S. 1, 15 (2012) (citing *Coleman*, 501 U.S. 722). In *Martinez*, the Supreme Court held that a failure of counsel in an initial collateral proceeding to assert a claim of ineffective assistance of trial counsel may constitute cause for purposes of procedural default if the claim is "substantial" or "has some merit." *Id.* at 14. But the holding in *Martinez* is limited; it is not applicable to "attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review

in a State's appellate courts." *Id.* at 16 (citations omitted). Because the claim of attorney error in this case pertains to appellate habeas counsel, *Martinez* is inapplicable.

Moreover, a claim of ineffective assistance must be "presented to the state courts as an independent claim before" a petitioner may attempt to use it "to establish cause for a procedural default." *See Murray*, 477 U.S. at 489. Thus, a petitioner must have properly presented and exhausted the ineffective assistance of counsel claim in state court before it will be considered as cause to excuse procedural default. *See Edwards*, 529 U.S. at 453. Wright has not done so.

In his consolidated second and third habeas petitions, Wright raised a claim that his appellate habeas counsel was ineffective in failing to file a motion for review of the denial of the motion for articulation. *See* Pet'r's Resp. Mem. Opp'n Pet. Writ Habeas Corpus, App'x A, Doc. No. 83-1 (Count Four). Wright has not, in any collateral state habeas petition, raised a claim of ineffective assistance of appellate habeas counsel for failing to include the ineffective assistance of appellate counsel claim in his habeas appeal brief.

Appellate habeas counsel testified at the hearing held in connection with the consolidated state habeas petition. *See* Pet'r's Resp. Mem. Opp'n Pet. Writ Habeas Corpus, App'x H, Doc. No. 83-9, at 11–24. Counsel stated that he had not pursued the motion for review because, at the time, he had received verbal and written communications from the petitioner and a relative that he should file no further motions because the petitioner planned to obtain a new attorney. *See id.* at 21–23. In the trial court's decision denying the consolidated habeas petition, the judge stated that Wright had not shown any constitutionally deficient performance on the part of appellate habeas counsel in connection with the decision not to file a motion for review of the denial of the motion for articulation. *See id.*, Tr. of Decision, at 4–6. The trial court further found that Wright had not shown that he would have prevailed in his appeal of the denial of his first habeas petition

were counsel to have filed the motion for review. *See id.* Thus, the judge concluded that Wright had not met the prejudice prong of the *Strickland* standard. *See id.* Wright did not raise that claim in his appeal to the Appellate Court. Nor did he raise the claim in his petition for certification to the Connecticut Supreme Court. Thus, the claim has not been exhausted. Because Wright has not demonstrated that appellate habeas counsel was ineffective under the standard set forth in *Strickland*, the conduct of his attorney cannot constitute cause for the procedural default of his claims. *See* Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, App'x H, at 4–21.

I conclude that Wright's ineffective assistance of trial counsel and appellate counsel claims (asserted in grounds two and three) both have been procedurally defaulted, and that Wright has not shown cause to excuse the procedural defaults. Because Wright has not established cause for overcoming the procedural defaults, I need not reach the inquiry on actual prejudice. *See McCleskey*, 499 U.S. at 502.

Nor has Wright alleged that failure to consider this claim would result in a "fundamental miscarriage of justice," i.e., "the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. To meet that exception, the "petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (internal quotation marks omitted). To establish a credible claim of actual innocence, a petitioner must support his claim "with new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Actual innocence requires a showing of factual innocence, not "legal innocence." *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992).

Wright does not contend that he is actually innocent. Nor has he alleged any new evidence tending to establish his actual innocence. Thus, he has not met the exception to the procedural default doctrine. I conclude that Wright's claims of ineffective assistance of trial and appellate counsel (set forth in grounds two and three of the amended petition) are procedurally defaulted and are barred from habeas review.

## V.      Conclusion

Wright's Amended Petition for Writ of Habeas Corpus [**Doc. No. 45**] is **DENIED**. The pending Motions [**Docs. Nos. 130, 131, 132, 133, 135, & 138**] are **DENIED** as moot. The Clerk is directed to enter judgment in favor of the respondent and close this case.

I conclude that Wright has not shown that he was denied a constitutionally or federally protected right. Thus, any appeal from this order would not be taken in good faith, and a certificate of appealability will not issue.


So ordered.

Dated at Bridgeport, Connecticut this 10th day of July 2017.


/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge